## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 15-40079-01-DDC** |
| **LORAN W. WILLIAMS (01),** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

The United States Probation Office (USPO) has asked the court to modify the conditions applying during defendant's term of supervised release.  Specifically, the USPO has asked the court to modify defendant's conditions to require him to:

- participate successfully in a mental health treatment program and/or sex offender treatment program;

- abide by all rules, requirements, and conditions of the sex offender treatment program, if referred to one (including, possibly, polygraph and visual reaction testing to assess defendant's risk level and determine whether he has complied with his conditions of supervision—subject to defendant's Fifth Amendment rights); and

- contribute to the cost of such programming based on his ability to pay.

*See* Doc. 36 at 1.[1]

The USPO makes its request after defendant's conviction in our court for failing to register under the Sex Offender Registration and Notification Act, a violation of 18 U.S.C.

---

[1]  As initially filed, the USPO's request also asked the court to require defendant to secure "a current psychosexual and/or mental health evaluation."  Doc. 36 at 1.  This aspect of the request is moot because defendant already consented to modify his conditions to require this evaluation. *See* Doc. 53 at 2 (Order Modifying Conditions of Supervised Release) (issued February 27, 2020).  And, as discussed below, defendant now has completed this evaluation.

§ 2250(a).  Doc. 31-1 at 3 (Amended Presentence Report (PSR)).  Defendant's duty to register

stemmed from a Michigan conviction in 2010.  *Id.* at 3–4.  Later, he moved to Kansas and lived

here for about nine months without registering.  *Id.* at 4.  The Michigan court also had issued a

warrant based on defendant's failure to comply with his registration obligation.  *Id.*  Defendant

was indicted in our court in September 2015.  *Id.* at 3.  He pleaded guilty to the failing to register

charge in July 2016 and the government agreed to a binding plea agreement under Rule

11(c)(1)(C).

The plea agreement asked the court to sentence defendant to 12 months and one day in

prison, followed by five years of supervised release.  *Id.* at 3.  The guidelines imprisonment

range for defendant was 15 to 21 months.  *Id.* at 12.  The court rejected the parties' plea

agreement and imposed a sentence within the guideline range—18 months followed by five

years of supervised release.  Docs. 32, 34.

Defendant's history and characteristics explain the USPO's concern about sex offender

treatment.  In 2010, a Michigan state court convicted defendant of Criminal Sexual Conduct,

Second Degree and Criminal Sexual Conduct, Fourth Degree.  Doc. 31-1 at 3.  Defendant asserts

these convictions relied on a nolo contendere plea in the 29th Judicial Circuit Court in Michigan.

See Doc. 55-1 ("Judgment of Sentence").  That court sentenced defendant to 12 months in jail,

served concurrently, on each of his two convictions.  *Id.*  The court suspended the custody

sentences, however, and placed defendant on probation for 60 months.  Doc. 31-1 at 6.  About

eight months after sentencing, the Michigan sentencing court revoked defendant's probation and

ordered him to serve the remainder of his sentence.  *Id.*

These convictions are troubling, though defendant disputes some aspects of the

underlying offense conduct.  According to his Amended Presentence Investigation Report (PSR),

defendant, then 38 years old, met two young girls at a Michigan lake for the purpose, ostensibly, of fishing together.  Doc. 31-1 at 7.  One of the two girls was 13 years old.  *Id.* at 6.  The other was 14.  *Id.*  The younger girl reported that defendant "kept grabbing and rubbing both girls' buttocks, then moved to touching their chest and grabbing their breasts.  [She] reported [that defendant] also kissed both girls a couple of times."  *Id.* at 7.  The younger girl left the outing and the other one—the 14-year-old—stayed behind with defendant.  *Id.*  The older girl told law enforcement officers that defendant "forced her to [the] ground, she told him no, but he pulled her pants down and began to penetrate her."  *Id.*  The girl told defendant "to stop because it hurt.  She reported he continued with sexual intercourse."  *Id.*  Then, the girl again told defendant to stop and, this time, he stopped.  *Id.*  During the investigation, the older girl's mother told law enforcement officers that "her daughter had a learning disability, [and] although she is 14, and in the eighth grade, she was approximately a fifth or sixth grade level with her learning disability."  *Id.*

Defendant's version of the nature and circumstances of his 2010 convictions is remarkably different.  According to the PSR, "defendant admitted to [a Michigan] deputy to hugging and kissing both girls and inadvertently touching their breasts or buttocks in a playful manner."  Doc. 31-1 at 7.

The current record does not permit the court to resolve the considerable dissonance separating the two versions of the offense conduct.  But, the court is certain of this much:

- Defendant, when 38 years old, went fishing with two girls in their early teens.

- One of the two girls had a learning disability.

- At best, defendant hugged and kissed the two girls and "inadvertently" touched "their breasts or buttocks" in a manner he termed "playful."  At worst, defendant engaged a 14-year-old girl with a learning disability in sexual intercourse.

- Defendant's conduct sufficed to support convictions for two felony sex offenses under Michigan law.

*Id.* at 6–8.

## A.  Current Posture of this Federal Case

The USPO has asked the court to modify defendant's conditions of supervision.  Doc. 36. Defendant has agreed to part of the modification.  That is, he agreed to modify his conditions to require a "sex offense-specific/psychosexual assessment and/or mental health evaluation. . . ." Doc. 53 at 2.  Clinical Associates, P.A.—a firm who contracts with the USPO—conducted that evaluation on March 13, 2020, and provided a written report of its findings.  Its report is attached as Exhibit 1 to this Order.[2]  As pertinent to the current dispute, Clinical Associates recommended:

- "Mr. Williams should participate in and complete a treatment program for sexual offenders."

- "Mr. Williams should participate in a sexual history polygraph to aid in treatment planning."

Ex. 1 (next-to-last page of letter with unnumbered pages).

Defendant never has opposed the idea of sex offender treatment.  Instead, he consistently has objected to the USPO's request for a modification that imposes a financial obligation on him, *i.e.*, the condition that defendant "must contribute to the cost based on the ability to pay."  Doc. 36 at 1; *see* Doc. 55 (Defendant's Supplemental Memorandum of Law) at 4 (explaining defendant's "main objection is the cost of this programming").  Defendant reports that the USPO's preferred program for sex offender treatment, if ordered by the court, would require him to pay $40 for each group meeting he attends—which likely would occur weekly—and between

---

[2]     Because it contains a variety of personal health information, the court directs the Clerk to place Exhibit 1 under seal.

$65 to $80 for each polygraph exam.  *Id.*  Defendant contends that he and his wife are "barely

scraping by" on existing income.  *Id.*  Defendant also asserts that Congress hasn't authorized the

federal courts to require payments "for psychiatric treatment."  Doc. 46 at 3.

Supporting defendant's cost-based objection is his access to a free alternative.  As a

courtesy to Michigan, the Kansas Department of Corrections has offered to provide sex offender

treatment programming to defendant.  Defendant reports that this programming does not require

him to pay anything.  At a hearing on July 29, 2020, Shelley Anderson of the Kansas Department

of Corrections testified.  Ms. Anderson explained the substance of the Kansas state sex offender

treatment available to defendant.  At the same hearing, United States Probation Officer Jennifer

Goss explained the differences between the state program and the one provided by Clinical

Associates—the USPO's contractor for sex offender treatment.

Finally, defendant objects to the program that the USPO would require him to complete,

should the court adopt the condition.  That treatment, provided by Clinical Associates, is only

available during weekday mornings.  Thus, if the court imposes a condition that requires him to

complete—and, importantly, pay for—the treatment recommended by the USPO, defendant

would miss about half a day of work each week for as long as his treatment lasts.

### B. Decision and Analysis

Some decisions about the current dispute are easier than others.  Indeed, the first

question—should the court adopt a condition requiring defendant to participate successfully in

sex offender treatment—isn't even contested.  During a hearing on July 29, 2020, defendant

announced that he has been willing and remains willing to complete the sex offender treatment

regimen offered by the Kansas Department of Corrections.  The court thus adopts a condition

requiring defendant to participate in and successfully complete a sex offender treatment program.

This decision doesn't end the dispute, however.  The USPO and the government contend that the Kansas Department of Corrections' program isn't sufficient to protect the public.  They argue that the state program's treatment is provided by a probation officer, and not a trained clinician.  Also, they argue, the state-run program doesn't include a diagnostic component.  And without the information an individualized diagnosis would yield, the USPO asserts, it can't fully assess defendant's risk to the community or the correctional treatment he needs.

Evaluating this argument begins with the legal standard for modifying an offender's conditions.  Part 1, below, discusses that legal standard as applied to defendant.  Then, in Part 2, the court considers the cost component of the USPO's treatment program condition.

**1.  Section 3583(e)'s factors to consider to modify conditions of supervised release.**

The controlling statute authorizes the court, "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) [to] . . . modify, reduce, or enlarge the conditions of supervised release" at any time before the term of supervision expires.  18 U.S.C. § 3583(e)(2); *see also United States v. Begay*, 631 F.3d 1168, 1174 (10th Cir. 2011).  The specified statutory factors direct the court to consider:

- *(a)(1):  the nature and circumstances of the offense and defendant's history and characteristics;*

- *(a)(2)(B):  adequate deterrence to criminal conduct;*

- *(a)(2)(C):  the public's protection from further crimes of defendant;*

- *(a)(2)(D):  providing defendant with "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;"*

- (a)(4):  the kinds of sentence and the sentencing range established for the applicable category of offense (as set forth in the guidelines);

- *(a)(5):  any "pertinent policy statement" issued by the Sentencing Commission;*

- (a)(6):  the need to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct;

- (a)(7):  the need to provide restitution.

18 U.S.C. § 3353(a).

Here, five of the eight factors—italicized above—control the analysis.  The court discusses each germane factor, below.

*First*, the nature of defendant's offense on conviction is his failure to register as a sex offender, as federal law required.  It is a serious offense because defendant's failure to abide his registration duty deprived Kansas law enforcement offices of knowledge that a felony sex offender was living in their community.  Still, defendant argues, his offense can't support a sex offender treatment condition.  *See* Doc. 46 at 11 (citing USSG § 5D1.3(d)(7)(A) and arguing that this provision "only recommends sex-offender assessment and treatment when the instant offense of conviction is a 'sex offense'").  Defendant's argument disregards controlling precedent in our Circuit.  *See, e.g.*, *United States v. Bear*, 769 F.3d 1221, 1226 (10th Cir. 2014) ("Sex offender conditions of supervised release may be imposed, even at sentencing for crimes which are not sex crimes, if supported by § 3583(d).").  This defendant's history and characteristics strongly favor a condition for sex offender treatment.  His 2010 felony sex convictions involved girls aged 13 and 14.  These two crimes speak for themselves.  Defendant's reaction to his convictions sponsors even greater concern.  He violated his probation in the Michigan case within eight months of his convictions.  Five years later after his move to Kansas, he ignored his registration obligations.

*Second* and *third*, the court's duty to furnish a sentence that affords adequate deterrence to criminal conduct and protects the public from further crimes also favors a treatment condition like the one requested by the USPO.  At the hearing on July 29, 2020, United States Probation

7

Officer Jennifer Goss explained why the treatment offered by the Kansas Department of Corrections did not provide the kind of individualized diagnosis that would inform judgments about the treatment warranted by this defendant's history.  The court found her explanation credible and persuasive.  In particular, the court is concerned that defendant may have minimized the seriousness of his criminal sexual misconduct in Michigan.  Defendant explained his version of his conduct producing the Michigan conviction to Clinical Associates when they assessed him.  Defendant's version reports a substantially less malignant series of events.  If defendant's version amounts to a state of denial about what he really did, that concerns the court.  At present, the court can't discern whether its concern is fact-based.  But, Clinical Associates determined a treatment program would benefit defendant.  And, the court finds, a more focused, individualized treatment program like the one recommended by the USPO is more likely to discern defendant's individualized needs.  The Kansas state program is more formulaic and will not make a sufficiently individualized assessment to provide the requisite deterrence and public protection.

*Fourth*, the duty to provide "needed educational . . . training . . . medical care, or other correctional treatment in the most effective manner" favors the programming recommended by the USPO.  The court does not minimize the value of the sex offender program offered by the Kansas Department of Corrections.  Surely it is valuable.  But, § 3553(a)(2)(D) directs the court to provide needed correctional treatment "in the most effective manner."  And based on Officer Goss's testimony, the court finds that the USPO-recommended treatment program is the "most effective" of the two alternatives.

*Fifth*, § 3553(a)(5) directs the court to consider any "pertinent policy statement . . . issued by the Sentencing Commission."  This factor weighs against the USPO's request.  United States Sentencing Guideline § 5D1.3(d) recommends when the court should impose special conditions.

It provides: "If the instant offense of conviction is a sex offense"—a term defined in Application Note 1 to USSG § 5D1.2—the court should impose a condition like the one sought by the USPO here.  USSG § 5D1.3(d)(7)(A).  Failing to register does not qualify as a "sex offense."  *See* Application Note 1 to USSG § 5D1.2.  But while this policy statement doesn't recommend such a condition for a registration violation, the lack of recommendation isn't controlling.  *See Bear*, 769 F.3d at 1226 (courts may impose sex offender conditions for crimes other than sex offenses where § 3583(d) supports the conditions).

Here, the court finds requiring the USPO-recommended sex offender treatment program is supported by § 3583(d)'s requirements.  The court's discretion to impose special conditions of supervised release is limited by the requirements that

> the conditions (1) be reasonably related to the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, or the defendant's educational, vocational, medical, or other correctional needs; (2) involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation; and (3) be consistent with any pertinent policy statements issued by the Sentencing Commission.

*Bear*, 769 F.3d at 1226.  As discussed above, the court finds requiring the sex offender treatment program is reasonably related to the nature and circumstances of defendant's failure to register offense, his history and characteristics, and the need to deter future criminal conduct, protect the public from further crimes, and provide correctional treatment.  *See Bear*, 769 F.3d at 1227–28.  The court finds requiring the USPO approved programming, on the terms in this Order, will not involve a greater deprivation of liberty than is reasonably necessary.  *See id.* at 1229–31.  Finally, the court concludes imposing this condition is consistent with pertinent policy statements issued by the Sentencing Commission, even though defendant's conviction in this court was not a sex offense.  *See id.* at 1226, 1231 (explaining § 3583(d)(3) doesn't require the

condition "to be expressly covered by policy statements" and that a condition may be "consistent with" the policy statements as long as it doesn't "directly conflict" with them; for example a condition may be warranted where the court "has reason to believe the defendant is in need of treatment" and the § 3553(a) factors justify the condition).

In sum, four of the five pertinent factors favor a condition requiring defendant to complete a sex offender treatment program approved by the USPO successfully.  Because the USPO recommends the program provided by Clinical Associates and because the USPO has demonstrated the programming offered by the Kansas Department of Corrections isn't the "most effective" means to diagnose and treat this defendant's needs, the court modifies defendant's conditions to require him to complete a sex offender treatment program approved by the USPO.

### 2.    The court declines to impose a financial obligation on the current record.

These conclusions leave one last dispute:  Should defendant's sex offender treatment condition require defendant to "contribute to the cost based on the ability to pay[?]"  Doc. 36 at 1.  Defendant objects to this aspect of the proposed modification, arguing that he lacks the capacity to pay and, in any event, he contends, Congress hasn't authorized the court to impose a financial obligation requiring sex offenders to pay for their own treatment.  *See* Doc. 46 at 4-10.

Addressing the broader question first, our Circuit doesn't appear to have encountered defendant's argument.  But the Seventh Circuit has.  In *United States v. Hinds*, 770 F.3d 658, 665-67 (7th Cir. 2014), the defendant argued that § 3583 and other supervised release statutes "are silent on the issue of payment for treatment and testing services."  *Id.* at 666.  This silence, the defendant in *Hinds* contended, was dispositive because "[w]hen Congress wants a defendant to pay for something, Congress explicitly says so."  *Id.*  Defendant makes a similar argument here.  *See* Doc. 46 at 5–10 (arguing Congress has not explicitly authorized courts to obligate a

defendant to pay for his own treatment while on supervised release and without such express

authorization the court should not order defendant to do so as a condition of his supervised

release).

The Seventh Circuit, however, held that the court was authorized to impose the condition

requiring the defendant to pay a portion of the fees for his substance abuse testing and treatment.

*Hinds*, 770 F.3d at 666. This court, like the Seventh Circuit, is unpersuaded by defendant's

argument.  Section 3672 of Title 18 authorizes the Director of the Administrative Office of the

United States Courts

> to expend funds or to contract with any appropriate public or private
> agency or person to monitor and provide services to any offender in
> the community authorized by this Act, including treatment, . . .
> corrective and preventative guidance and training, and other
> rehabilitative services designed to protect the public and promote
> the successful reentry of the offender into the community. . . .
> Whenever the court finds that funds are available for payment by or
> on behalf of a person furnished such services . . . the court may direct
> that such funds be paid to the Director.

This language, the Seventh Circuit held "authorizes a district court to impose a payment

condition for substance abuse treatment and drug testing. *Hinds*, 770 F.3d at 666.  Indeed, in

another case the Seventh Circuit held this language is "'broad enough to encompass the

requirement that [a] defendant make good the government's "buy money."'" *United States v.

Cary*, 775 F.3d 919, 928 (7th Cir. 2015) (quoting *United States v. Daddato*, 996 F.2d 903, 904

(7th Cir. 1993)).  The court finds the Seventh Circuit's reasoning persuasive and, absent

controlling authority, predicts our Circuit would adopt the same rule.

The inquiry does not end there, however.  For as the Seventh Circuit cases also recognize,

"just because a court can do something does not mean that it should."  *Hinds*, 770 F.3d at 666.

In fact, *Hinds* vacated a financial condition because it was unsupported by factual findings and was not contingent on the defendant's ability to pay.  *Id*. at 666–67.

In the current case, the financial condition sought by the USPO is better than the one in *Hinds*.  The putative condition here is tempered by defendant's finances, *i.e.*, he "must contribute to the cost based on the ability to pay."  Doc. 36 at 1.  At bottom, however, the court is unwilling to impose the financial obligation because neither the USPO nor the government has provided any information about defendant's financial wherewithal.  And, defendant plausibly has asserted that he cannot afford to pay even part of the cost.

Finally, one other circumstance contributes to the court's decision on this financial issue.  The sex offender treatment favored by the USPO is only available during regular working hours.  So, to satisfy the program required by the USPO's condition, defendant must take time off from his job—where he is paid by the hour—to attend treatment.  Forcing defendant to pay for this treatment in the unusual circumstances of this case is a double whammy.  At least on the current record, the court declines to require defendant to pay the cost of a program preferred by the USPO because defendant has offered to participate in other treatment that does not impose a financial burden on defendant or, for that matter, the USPO.

In sum, Congress has authorized the court to impose a financial burden on defendant.  But, the court in its discretion declines to impose that burden in this case's unusual circumstances.[3]

---

[3]      The court must make this decision on a factual record that is relatively sparse.  Defendant has asserted that he lacks the wherewithal to contribute to the cost.  No one seems to dispute his position.  Should the record change, so might the court's decision.

## C.  Conclusion

The court holds that it should grant the USPO's request (Doc. 36) in part.  It thus modifies defendant's existing conditions to require the USPO's approved sex offender treatment program.  But, the court denies the USPO's request to require defendant to contribute to the cost of that program.

**IT IS THEREFORE ORDERED** that defendant Loran W. Williams's conditions are modified to include the following condition:

> You must successfully participate in a sex offender treatment program as directed by the U.S. Probation Officer.  If referred to a sex offender treatment program, you must abide by all program rules, requirements, and conditions of the sex offender treatment program, which may include polygraph and visual reaction testing as approved by the Probation Office to assess your risk level and determine if you are in compliance with the conditions of supervision.  When submitting to any polygraph examination, you retain your Fifth Amendment rights.

**IT IS FURTHER ORDERED** that the USPO's request to add a condition requiring defendant to contribute to the cost of such treatment, based on his ability to pay, is denied on the current record.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed place Exhibit 1 under seal.

**IT IS SO ORDERED.**

**Dated this 27th day of August, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**